2024 IL App (1st) 220670
No. 1-22-0670

FIRST DIVISION
February 13, 2024

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER OF COOK COUNTY, ILLINOIS | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| (Newline Holdings, LLC, | ) ) | |
|     Petitioner-Appellant, | ) ) | |
| v. | ) ) ) | No. 20 COTD 1211 |
| Roy Bardwell, | ) ) | |
|     Respondent-Appellee). | ) ) ) | The Honorable James Carroll, Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1  Petitioner-appellant Newline Holdings LLC (Newline), the tax purchaser of property formerly owned by the mother of respondent-appellee Roy Bardwell (Roy), appeals from a May 2022 order denying Newline's petition for a tax deed. In that order, the court upheld Roy's strict compliance objections to Newline's petition, which included separate objections based on (1) Newline's failure to obtain court approval to extend the redemption period pursuant to section

21-385 of the Property Tax Code (Code) (35 ILCS 200/21-385 (West 2022)) and (2) Newline's failure to identify and serve notices upon Henry Bardwell III (Henry), as a party interested in the property.

¶ 2    For the following reasons, we conclude that the trial court correctly interpreted section 21-385 when it upheld Roy's objection based on Newline's failure to obtain leave of court for an extension of the redemption period. We also conclude that the trial court correctly upheld Roy's separate objection premised on Newline's failure to diligently ascertain and serve Henry, who was an interested party entitled to notice under the Code. On these independent grounds, we affirm the denial of Newline's petition for a tax deed.

¶ 3                                I. BACKGROUND

¶ 4    This appeal arises from the nonpayment of taxes and tax sale of a single-family home located at 70 East 155th Street in Harvey, Illinois. Charlene Bardwell (Charlene), the former owner of the property, passed away in 1991.[1] Her will bequeathed her estate to her 10 children, including Roy, Henry, and Bruce Bardwell (Bruce). In 1995, Charlene's will was filed with the Cook County circuit court in case No. 1995W01665. The will appointed Bruce as executor and Henry as successor executor.[2] It is undisputed that Charlene's will was never admitted to probate.

¶ 5                             A. Newline's Filings

¶ 6    Newline purchased the property at a tax sale on May 7, 2018. On August 30, 2018, Newline filed a "notice of extension of period of redemption" that extended the redemption date for the

---

[1]Although the parties' court submissions stated that Charlene passed away in 1995, Roy's objections in the trial court attached a "case summary" document for Charlene's estate (case no. 1995W01665) indicating her "date of death" was November 16, 1991.

[2] The record reflects that Bruce died in 2008.

property to November 12, 2020. On May 14, 2020, Newline filed a petition for tax deed in the circuit court of Cook County.

¶ 7        On September 25, 2020, Newline filed in the Cook County Clerk's Office a "notice of extension of period of redemption" stating that it extended the redemption date from November 12, 2020 to March 10, 2021. Also on September 25, 2020, Newline filed in the circuit court of Cook County an "amended petition for tax deed," similarly indicating that the expiration of the redemption period was now March 10, 2021. Important to this appeal, Newline did not seek court approval to extend the redemption period before filing these documents.

¶ 8        Newline subsequently caused the issuance of notices pursuant to sections 22-10 through 22-25 of the Code (35 ILCS 200/2-10 to 22-25 (West 2020)).[3] Those notices stated that the period of redemption would expire on March 10, 2021, *i.e.*, the date reflected in Newline's September 2020 notice of extension and amended petition. A number of notices were sent to the property; they were addressed to Roy, certain other of Charlene's children, and to the "Unknown Heirs and Legatees of Charlene Bardwell." However, it is undisputed that Henry was not specifically named or served with these notices.

¶ 9        On June 7, 2021, Newline filed in the circuit court of Cook County an application for an order directing the county clerk to issue a tax deed. In that filing, Newline stated that the petition for tax deed was filed on September 25, 2020, that the original redemption period expired on November 12, 2020, and that "the period of redemption, as extended," expired on March 10, 2021.

---

[3]Section 22-10 of the Code requires a tax purchaser to send a notice to "owners, occupants, and parties interested in the property, including any mortgagee of record." 35 ILCS 200/22-10 (West 2020). A section 22-10 notice must be given "not less than 3 months nor more than 6 months prior to the expiration of the period of redemption" and must provide notice of the "date of expiration of the period of redemption." *Id*. Under section 22-25, the tax purchaser must additionally prepare and deliver the same form of notice "to the clerk of the Circuit Court of the county in which the property is located." *Id*. § 22-25. The clerk then mails the section 22-25 notices by certified mail. *Id*.

¶ 10        Elsewhere within that application, Newline identified the parties interested in the property to include Roy and "UNKNOWN HEIRS AND LEGATEES OF CHARLENE BARDWELL."[4] Newline did not name Henry as an interested party. Newline attached as exhibits copies of the section 22-10 and section 22-25 notices, which stated that the period of redemption was to expire on March 10, 2021.

¶ 11        Newline scheduled a tax deed "prove up" hearing on July 6, 2021. Roy appeared *pro se* at that hearing. On August 3, 2021, Roy's attorneys entered an appearance.

¶ 12        B. Roy's Objections to Newline's Application for a Tax Deed

¶ 13        On August 30, 2021, Roy filed a number of "Strict Compliance Objections" to Newline's application for issuance of a tax deed. Among them, Roy contended that Newline violated section 21-385 of the Code (*id.* § 21-385) when it filed an amended petition in September 2020 purporting to extend the redemption date, because Newline did not obtain leave of court to extend the redemption date. Because Newline did not obtain court approval, Roy contended that the September 25, 2020, notice was a "nullity," such that the effective redemption date was never extended beyond November 12, 2020. In related objections, Roy asserted that Newline's notices failed to "strictly comply" with the Code's notice provisions because they incorrectly stated that the petition was filed on September 25, 2020, *i.e.*, the date of the amended petition, and because they incorrectly stated that the redemption date was March 10, 2021, when it had not been extended beyond November 12, 2020.

---

[4]Newline identified the person interested in the property as: "OCCUPANTS, [Cook County Clerk] KAREN A. YARBROUGH, CHARLENE BARDWELL, UNKNOWN HEIRS AND LEGATEES OF CHARLENE BARDWELL, ROY J. BARDWELL, MICHAEL C. BARDWELL, GARY G. BARDWELL, R. TERRY JOHNSON, KEISHA JOHNSON."

¶ 14        Separately, Roy objected on the ground that Newline failed to strictly comply with the Code by failing to diligently ascertain, name, or serve Henry as a person interested in the property. Roy alleged that Newline was aware that Charlene had passed away, as it named her "Unknown Heirs and Legatees" as interested parties. Roy contended that "minimal diligence" by Newline would have revealed Henry's address. Roy attached as an exhibit a "case summary sheet" reflecting that Charlene passed away in 1991 and that her will was filed in 1995 under case number 1995W010665. Roy also attached a whitepages.com printout reflecting that a search for Henry Bardwell showed two addresses: the property's address in Harvey and a second address in Chicago. Roy also attached a copy of Charlene's will.

¶ 15        On January 3, 2022, Newline filed an answer to Roy's objections. Newline did not admit or deny Roy's assertions regarding extension of the redemption date. However, Newline admitted that it failed to name or serve Henry. Elsewhere in its answer, Newline did not admit or deny that Charlene had passed away, that her will was filed as case number 1995W010665, or that the will bequeathed her property to her children, including Roy and Henry. Newline claimed it had "no personal knowledge" of these facts and further answered that the copy of the will submitted with Roy's objections was illegible. Newline further stated that "no probate estate case has ever been opened to probate the Estate of Charlene Bardwell."

¶ 16        On January 18, 2022, Roy filed a reply to Newline's answer. Roy acknowledged that a probate case was not filed but argued that this was irrelevant, because tax purchasers are "required to check will and probate public records" to ascertain interested parties. Roy maintained that Charlene's will was "filed in the public record in 1995W010665" and thus could have been obtained with due diligence.

¶ 17 On January 25, 2022, the court heard argument on Roy's objections. Roy's counsel averred that Newline's notices failed to state the correct filing date because they stated the petition was filed on September 25, 2020 (the date of the purported amendment). Roy maintained the extended redemption date was "a nullity" because section 21-385 required Newline to seek leave of court for an extension. Roy claimed the redemption date "was never extended past November 12, 2020," such that Newline's notices contained an incorrect redemption date. Separately, Roy argued that Newline failed to check public records that would have revealed Charlene's will and Henry's identity as an interested party.

¶ 18 Newline's counsel acknowledged Newline had not filed for leave to amend the petition but contended that section 21-385 did not require an actual motion. Newline maintained that it validly extended the redemption date and amended its petition, such that its notices correctly reflected the extended redemption date. The court asked Newline's counsel if it was aware of "any cases under [section 21-]385 that go to this point," and counsel stated he was not. At that point, the court noted that it had found two possibly relevant decisions, *In re Application of the County Collector*, 2014 IL App (2d) 140223 (*Wolfe*), and *In re Application of County Collector for Judgment & Order of Sale Against Land & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1996 and Prior Years*, 318 Ill. App. 3d 641 (2000), but it needed to look at them more closely.

¶ 19 Separately, Newline asserted that its failure to name and serve Henry was a "non-issue" because Charlene's will was never submitted to probate and because there was no claim that Henry actually resided at the property. Newline also stated that "the fact that the will was entered decades ago and a will filed in '95 and never probated shows that [Henry] doesn't maintain an ownership interest." Newline similarly argued that, even if Henry became executor of the will, he had no

interest because the will was not probated. Newline thus denied that Henry had an interest that required him to be served with notice.

¶ 20     The court asked Newline's counsel to respond to Roy's argument that it was "required to check all public records including [p]robate filings" and why it had served "unknown heirs and legatees" if it did not know that Charlene was deceased. Newline's counsel responded:

> "[T]he only indication we had of her passing *** was our Accurint search on her. That's why we covered unknown heirs. You can see from the litany of people we did identify and serve, we thought we had any relevant heirs who may have had interest in the property ***. So we believe we had exercised due diligence in doing so."

Newline's counsel did not detail any other steps taken to identify interested parties.

¶ 21     At the conclusion of the January 22 hearing, the court stated it was taking the matter under advisement.

¶ 22          C.  Newline's Motion to Deem the Amended Petition Timely

¶ 23     On February 4, 2022 (before any ruling on Roy's objections), Newline filed a "Motion to Deem Amended Petition for Tax Deed Timely Filed Pursuant to 35 ILCS 200/21-385." Newline recited the language of section 21-385:

> "If prior to the expiration of the period of redemption or extended period of redemption a petition for tax deed has been filed under Section 22-30, upon application of the petitioner, the court shall allow the purchaser or his or her assignee to extend the period of redemption after expiration of the original period or any extended period of redemption, provided that any extension allowed will

expire not later than 3 years from the date of sale \*\*\*." 35 ILCS 200/21-385 (West 2020).

¶ 24    Newline pointed out that its September 25, 2020, amended petition reflected an extended redemption date of March 10, 2021, which was less than three years from the May 2018 date of sale. Newline "pray[ed] that the court enter an order finding that the amended petition [was] timely filed on September 25, 2020, or alternatively, grant Newline leave to re-file its amended petition, *instanter*."

¶ 25    Roy opposed Newline's motion to deem the September 2020 "amended petition" timely on the grounds that a prior order extending the redemption date was never sought or entered pursuant to section 21-385. That is, Roy argued that section 21-385 did not permit the court to "retroactively" deem the amended petition timely, especially after the redemption period had expired.

¶ 26    In its reply, Newline contended that its request was not untimely and complied with section 21-385 because its May 2020 petition for tax deed was filed "prior to the expiration of the period of redemption or extended period of redemption." Newline further argued that section 2-616(b) of the Code of Civil Procedure (735 ILCS 5/2-616(b) (West 2020)) should apply so that the amended petition "should relate back to the date upon which the same was timely filed and placed with the County Clerk." Newline otherwise argued that section 21-385 requires only "substantial compliance," not strict compliance. Newline urged that it substantially complied (even if it did not seek leave of court for the extension) because it "placed a timely extension with the County Clerk and gave proper notice of the extended redemption date."

¶ 27    D. The Trial Court Grants Roy's Objections and Denies Newline's Application for Tax Deed

¶ 28    On May 3, 2022, the court issued oral rulings in which it (1) denied Newline's motion to deem its amended petition timely, (2) granted Roy's strict compliance objections, and (3) denied Newline's application for a tax deed.

¶ 29    First, the court denied Newline's request to retroactively deem the September 2020 amended petition timely. The court recited section 21-385 and recognized that its first sentence "provides the tax buyer open-ended authority to extend the redemption period as long as it is not beyond the three-year period beyond the date of sale." The trial court interpreted the subsequent language of section 21-385 to mean,

> "at any time after a petition for deed has been filed, even if the redemption period had expired, the Court upon application could have extended the redemption period as long as it is not beyond the period of three years from the date of sale."

The court found that Newline did not comply because it "failed to make application to the Court pursuant to Section 21-385 of the Property Tax Code for an extension of the redemption period." Further, the court recognized that Newline's motion to deem the amendment timely was made "beyond the three-year period of time [after sale] allowed by Section [21-]385." Thus, the court denied Newline's motion to deem the amended petition timely filed.

¶ 30    The court then addressed Roy's strict compliance objections. Again relying on its conclusion that section 21-385 "requires an application to the Court to extend the redemption date once the petition is filed," the court found that Newline's "extension of the redemption period [to March 2021] by filing an amended petition is a nullity." In turn, the court found that Newline's notices set forth "the wrong redemption dates" and "did not strictly comply with the notice provisions" of the Code.

¶ 31    Separately, the court also upheld Roy's objection based on Newline's failure to name and serve Henry, concluding that Newline failed to conduct a reasonably diligent inquiry to discover and name all interested parties. The court rejected Newline's reliance on the fact that no probate case was ever opened. The court found that Newline had reason to know Charlene was deceased and that "to look only whether a probate estate was open is only half of [the] diligent inquiry" required under the circumstances. Thus, it found Newline "did not conduct a diligent inquiry to determine the interested parties in the property." For these reasons, the court granted Roy's strict compliance objections and denied Newline's application for a tax deed.

¶ 32    On May 3, 2022, the court entered a corresponding written order in which it (1) denied Newline's motion to deem its amended petition for tax deed timely filed, (2) granted Roy's "strict compliance objections," and (3) denied Newline's petition and application for an order directing the county clerk to issue a tax deed. Newline filed a timely notice of appeal from that order.

¶ 33                                II. ANALYSIS

¶ 34    On appeal, Newline asserts the trial court erred in (1) denying its motion to deem the amended petition timely, (2) sustaining Roy's objections premised on section 21-385 and the failure to serve Henry, and (3) denying its petition for a tax deed.[5] Newline primarily asserts that the trial court erred as a matter of statutory interpretation, when it determined that Newline violated section 21-385 of the Code by not seeking leave of court to extend the redemption date in September 2020. Newline urges that the statute does not require leave of court where, as here, the purchaser has filed a petition for tax deed but extends the deadline *before* the expiration of the redemption period. Alternatively, Newline suggests that, under the "relation back doctrine" and

_____

[5]Notably, the court's reading of section 21-385 formed the basis for both its decision to sustain the objection premised on Newline's failure to seek leave of court for an extension in September 2020, as well as the denial of Newline's February 2022 motion to deem the amended petition timely.

section 2-616(b) of the Code of Civil Procedure (*id.*), the court should have granted its February 2022 motion to deem the September 2020 amended petition timely.

¶ 35 Separately, Newline suggests the court erred when it found that Henry was a party interested in the property and entitled to notice under section 22-10 of the Code. See 35 ILCS 200/22-10 (West 2020) (requiring notice of expiration of the period of redemption to "owners, occupants, and parties interested in the property"). Newline argues that it was not required to name Henry, notwithstanding that he was named as an heir in Charlene's will, because the will was not subject to a probate proceeding. Newline further argues that Henry's status as successor executor to the will did not make him an interested party. Newline otherwise urges that the court's finding that it failed to conduct a diligent inquiry was against the manifest weight of the evidence. Newline suggests it completed adequate diligence because it searched but "found no probate proceeding relating to the property."

¶ 36 For the following reasons, we conclude that the court correctly sustained Roy's objection premised on Newline's failure to seek leave of court to extend the redemption date pursuant to section 21-385. That statute instructs that, "[i]f prior to the expiration of the period of redemption or extended period of redemption a petition for tax deed has been filed," a tax purchaser must make an "application" for court approval of an extension. *Id.* § 21-385. As applied in this case, Newline had filed a petition for tax deed in May 2020. Thus, it needed court approval for an extension of the redemption period. It did *not* seek that approval before filing in the Cook County Clerk's Office a notice that purported to extend the end of the redemption period to March 10, 2021. The purported extension was not valid, and in turn Newline's notices indicated the wrong redemption date. This reason alone compels that we affirm the trial court's denial of the tax deed.

¶ 37        Independently, we also find the trial court properly sustained Roy's objection premised on Newline's failure to name Henry, one of the children designated in Charlene's will to inherit her estate. We find that Henry was "interested in the property," for purposes of section 22-10 of the Code, even if the nonprobated will did not confer an immediate right to take title. Further, the trial court's finding that Newline did not undertake the requisite diligent inquiry to locate interested parties is not against the manifest weight of the evidence. The record reflects that Newline could have identified Henry and served him with the requisite notices but failed to do so. We also affirm the denial of Newline's petition for tax deed on this basis.

¶ 38        A. Section 21-385 Contemplates Court Approval of an Extension After a Petition Has Been Filed

¶ 39        Newline's primary contention is that the trial court erred in holding that section 21-385 required it to obtain leave of court to extend the redemption date because it had already filed a petition for tax deed—regardless of whether it sought the extension before or after expiration of the redemption period. Newline emphasizes that the sentence in section 21-385 referencing an "application" for court approval of an extension also includes the phrase "after expiration of the original period or any extended period of redemption." *Id.* Newline urges this means that court approval is needed only if a petition for tax deed has been filed *and* the redemption period has already expired. Newline asserts that it did not need court permission to file a notice of extension in September 2020, because although it had already filed a petition, the redemption period had not yet expired.

¶ 40        Separately, Newline suggests that—even assuming it was required to obtain leave of court to extend the redemption date—the court erroneously denied such leave, when it denied its motion to deem the September 2020 amended petition timely filed. Newline suggests that, pursuant to the

"relation-back" doctrine, the court should have retroactively approved the September 2020 amended petition, which reflected the extension of the redemption date.

¶ 41    We thus turn to assess whether (as the trial court found) section 21-385 requires court approval for an extension whenever a petition for tax deed has been filed or if (as Newline contends) section 21-385 requires leave of court only when a petition has been filed and the extension is sought "after expiration of the original period or any extended period of redemption." *Id.* In interpreting this provision, we follow familiar principles of statutory construction. "Our primary objective in interpreting a statute is to determine and give effect to the legislature's intent. [Citation.] *** The most reliable indicator of the legislature's intent is the statute's language, which must be given its plain and ordinary meaning." *In re Application of the County Treasurer and ex officio County Collector*, 2011 IL App (1st) 101966, ¶ 21 (*Glohry*). "If possible, a statute should be construed so that no language is rendered meaningless or superfluous." *Id.* If statutory language is clear and unambiguous, the court must apply it as written. *Id.* ¶ 22. Questions of statutory construction are reviewed *de novo*. *Id.* ¶ 20.

¶ 42    Section 21-385 provides, in relevant part:

> "Extension of period of redemption. The purchaser or his or her
> assignee of property sold for nonpayment of general taxes or special
> assessments may extend the period of redemption *at any time before
> the expiration of the original period of redemption, or thereafter
> prior to the expiration of any extended period of redemption,* for a
> period which will expire not later than 3 years from the date of sale,
> by filing with the county clerk of the county in which the property
> is located a written notice to that effect describing the property,

stating the date of the sale and specifying the extended period of redemption. \*\*\* *If prior to the expiration of the period of redemption or extended period of redemption a petition for tax deed has been filed under Section 22-30, upon application of the petitioner, the court shall allow the purchaser or his or her assignee to extend the period of redemption after expiration of the original period or any extended period of redemption,* provided that any extension allowed will expire not later than 3 years from the date of sale \*\*\*. If the period of redemption is extended, the purchaser or his or her assignee must give the notices provided for in Section 22-10 at the specified times prior to the expiration of the extended period of redemption \*\*\*." (Emphases added). 35 ILCS 200/21-385 (West 2020).

¶ 43 The trial court agreed with Roy that, because Newline had already filed a petition for tax deed, Newline was required to seek leave of court, pursuant to the sentence of the statute contemplating court approval where "a petition for tax deed has been filed." Newline emphasizes this sentence includes the phrase "after expiration of the original period or any extended period of redemption." In turn, Newline urges that court approval is necessary only if the petition has been filed *and* the purchaser seeks "to extend the period of redemption *after* it had lapsed." Newline argues this language did not apply to its extension, because the period of redemption had not yet lapsed when it sought to extend in September 2020. Instead, Newline suggests its extension was valid under the preceding statutory language that a purchaser "may extend the period of redemption at any time before the expiration of the original period of redemption, or thereafter prior to the

expiration of any extended period of redemption, for a period which will expire not later than 3 years from the date of sale," by filing a notice with the county clerk. *Id.*

¶ 44    We reject Newline's reading of section 21-385 and agree with the trial court. We keep in mind that a "statute should be read as a whole and construed so as to give effect to every word, clause, and sentence." *Palm v. Holocker*, 2018 IL 123152, ¶ 21.

¶ 45    Reading section 21-385 as a whole, we find it clearly delineates that different procedures should be followed to extend the redemption date, depending on whether the purchaser has filed a petition. If a petition has not yet been filed, the purchaser may extend the period of redemption "at any time before the expiration of the original period of redemption" merely by filing a notice with the clerk of the county in which the property is located. 35 ILCS 200/21-385 (West 2020). However, if "a petition for tax deed has been filed," an extension must be obtained through an "application of the petitioner," upon which "the court shall allow" an extension "provided that any extension allowed will expire not later than 3 years from the date of sale." *Id.* That is, the statute contemplates court approval must be sought for an extension, after a petition has been filed.

¶ 46    As a practical matter, the reason for this distinction is apparent. Once a petition has been filed, the purchaser has affirmatively placed the matter on the court's docket. After that point, the court clearly has an interest in being made aware of, and having authority to approve, any extension requests. See *Redelmann v. K.A. Steel Chemicals, Inc.*, 377 Ill. App. 3d 971, 976 (2007) (It is "well established that trial courts possess the inherent authority to control their dockets. [Citation.]"). Indeed, it would make little sense for the purchaser (having already invoked the court's authority by filing the petition) to be able to change the expiration date of the redemption period without the court's approval.

¶ 47    In sum, we interpret section 21-385 in a manner that gives meaning to the sentence contemplating that, after "a petition for tax deed has been filed," "upon application of the petitioner, the court shall allow" an extension of the redemption period. 35 ILCS 200/21-385 (West 2020). Here, there is no dispute that Newline did not make any motion or otherwise submit an "application" for court approval of the purported extension. Thus, the trial court properly found that Newline did not comply with the statute.

¶ 48    We briefly address Newline's related argument that, even if section 21-385 calls for court approval for an extension after the filing of a petition, Newline's failure to seek court approval is immaterial because the statute requires only "substantial" compliance, rather than strict compliance. Newline cites a Second District decision that found that only substantial compliance with section 21-385 was necessary, such that "minor" typographical errors in the notice of extension filed with the county clerk did not preclude issuance of a tax deed. *Wolfe*, 2014 IL App (2d) 140223, ¶ 23 (petitioner substantially complied with section 21-385, notwithstanding that the notice of extension "misstated by three days" the date of sale and the extended period of redemption).

¶ 49    Newline's argument is unavailing. Even assuming that section 21-385 requires only "substantial" compliance, the failure to seek court approval for an extension is not a minor error (such as the typographical errors at issue in *Wolfe*) that may be excused under the "substantial compliance" standard. Notably, the *Wolfe* decision, unlike the instant case, concerned a notice of extension filed with the county clerk *before* a petition for tax deed was filed. Yet section 21-385 clearly indicates that, after the filing of a petition, a purchaser shall submit an "application" to the court before the "court shall allow" an extension. 35 ILCS 200/21-385 (West 2020). A purchaser

that has filed a petition cannot be said to have substantially complied if it ignores this basic requirement for obtaining a valid extension.

¶ 50    For the foregoing reasons, we conclude the trial court properly interpreted section 21-385 when it upheld Roy's objection based on Newline's failure to obtain leave of court for extension of the redemption date. Without court approval, the purported extension of the redemption period was not valid. In turn, the subsequent section 22-10 notices issued by Newline stated an incorrect redemption date and were defective. See *id.* § 22-40(a) (the court shall insist on "strict compliance with Section 22-10 through 22-25").

¶ 51        B. The "Relation Back" Doctrine Did Not Apply to Newline's February 2022 Motion to Deem the Amended Petition Timely

¶ 52    We turn to the portion of Newline's appeal challenging the denial of its February 2022 motion to deem the September 2020 amended petition timely filed. We note that the record and Newline's brief make clear that the only reason Newline filed that motion was to overcome Roy's objection based on Newline's failure to get court approval for the extension. That is, Newline's February 2022 motion effectively sought to retroactively obtain court approval for the extension that it attempted to make through its September 2020 notice filed with the county clerk.

¶ 53    Newline's sole basis to challenge the denial of the February 2022 motion is the "relation-back doctrine" of section 2-616(b) of the Code of Civil Procedure. 735 ILCS 5/2-616(b) (West 2020). Tellingly, however, Newline does not cite any case applying that doctrine in the context of a tax deed matter, let alone any case applying it for the specific purpose at issue here. Rather, we find it is clear that the doctrine is intended to preserve the right to plead substantive causes of action or defenses where the adverse party had notice of the underlying facts in a prior pleading.

We do not find it allows a party such as Newline to retroactively correct its failure to obtain court approval for an extension of time.

¶ 54    Section 2-616(b) provides:

> "The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time under any statute or contract *** if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross claim interposed in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted *** and for the purpose of preserving the cause of action, cross claim or defense set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended." *Id.*

¶ 55    Our supreme court has instructed that "[t]he purpose of the relation-back doctrine of section 2-616(b) is to preserve causes of action against loss by reason of technical default unrelated to the merits. [Citations.]" *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 355 (2008). "[R]elation back is appropriate where a party seeks to add a new legal theory to a set of previously alleged facts. [Citations.]" *Id.* at 358. "[A] new claim will be considered to have arisen out of the same

transaction or occurrence and will relate back if the new allegations as compared with the timely filed allegations show that the events alleged were close in time and subject matter and led to the same injury." *Id.* at 360.

¶ 56 The relation-back doctrine is plainly inapplicable to Newline's February 2022 motion regarding its September 2020 amended petition for tax deed. Newline did not seek to add any new cause of action, legal theory, or factual allegations. Rather, the February 2022 motion was an attempt to retroactively obtain court approval for the purported extension of the redemption date referenced in the September 2020 amended petition. In other words, Newline's motion sought to correct its failure to obtain court approval for its extension pursuant to section 21-385. We find no support for Newline's suggestion that the relation-back doctrine of section 2-616(b) applies in this context. Accordingly, we reject Newline's appeal insofar as it challenges the denial of its February 2022 motion to deem its amended petition as timely.

¶ 57 We note that our foregoing analysis is sufficient to affirm the denial of Newline's tax deed. That is, Newline failed to comply with section 21-385, which in turn caused it to issue defective notices. That failure could not be corrected under the relation-back doctrine. Nevertheless, we proceed to explain why the denial of the tax deed was independently warranted by Newline's failure to serve Henry as an interested party.

¶ 58 C. Newline's Failure to Name and Serve Henry with Statutory Notices Independently Warranted Denial of the Tax Deed

¶ 59 Wholly separate from arguments regarding the extension of the redemption date, Newline asserts the court erred in upholding Roy's objection premised on Newline's failure to name and serve Henry as an "interested" party pursuant to section 22-10 of the Code. See 35 ILCS 200/22-

10 (West 2020) (requiring notices to the "owners, occupants, and parties interested in the property").

¶ 60  Newline first argues that Henry was not an interested party, notwithstanding that he was identified in Charlene's will as one of the heirs of her estate and as the successor executor. Newline asserts that, because the will was never probated, Henry was not an interested party entitled to service. Separately, Newline challenges the trial court's finding that Newline failed to conduct a sufficiently diligent inquiry in failing to identify Henry as a party entitled to notice.

¶ 61  1. Henry Was "Interested" in the Property and Entitled to Notice

¶ 62  Section 22-40 of the Code specifies that the court shall direct the issuance of a tax deed only if "the notices required by law have been given." *Id.* § 22-40(a). In doing so, "[t]he court shall insist on strict compliance with Section 22-10 through 22-25." *Id.* "It is well established a tax purchaser must strictly comply with the statutory notice requirements and such notice provisions are to be rigidly enforced." (Internal quotation marks omitted.) *In re Application of the County Collector for Judgment & Order of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 2009*, 2015 IL App (4th) 140810, ¶ 28 (*Gupta*). The petitioner for a tax deed carries the burden of demonstrating that it complied with the Code and provided the requisite notice. *Glohry*, 2011 IL App (1st) 101966, ¶ 44.

¶ 63  Section 22-10 requires a tax purchaser to give notices to owners, occupants, and "parties interested in the property." 35 ILCS 200/22-10 (West 2020). "[A] tax deed petitioner must exercise due diligence to locate and notify parties interested in the property." *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 2022 IL App (1st) 211511, ¶ 38 (citing 35 ILCS 200/22-10 (West 2018)).

¶ 64      Section 22-10 does not define who qualifies as an "interested" party entitled to notice. However, this court recently explained:

> "This court has previously held that a tax purchaser has failed to act with minimal diligence if he has not made reasonable efforts to notify all persons whose interest may reasonably be inferred from the public records regarding the property's ownership. [Citations.] Moreover, a party who has certain rights under the Code is an interested party entitled to notice, even where those rights do not include the right to redeem. [Citation.] The Code defines 'nonownership interest' as 'any interest in real property other than a contingent interest and other than an ownership interest ***.' 35 ILCS 200/21-285 (West 2018). Additionally, this court has defined 'recorded interest' to mean an interest that can be inferred from public records, while distinguishing other recorded interest from recorded ownership. [Citation.]" *Id.* ¶ 39.

¶ 65      In the instant case, Charlene's will provided that Henry (along with Roy and several other of her children) would inherit her estate. However, the will was not admitted to probate.

¶ 66      It is clear that, had the will been admitted to probate, Henry would be considered an interested person entitled to notice. Such a situation occurred in *In re Application of the County Treasurer & ex officio County Collector of Lake County*, 403 Ill. App. 3d 985, 991 (2010) (*Muskat*). In that case, the property owner (Sylvia) had a will in which she devised the subject property in equal parts to her two children, Julian and Nikki. *Id.* at 987. Following Sylvia's death, a probate case was opened; the probate file reflected a New York address for Nikki. *Id.* A third

party purchased the property at a tax sale and caused notices to be sent to the subject property, but no notices were sent to Nikki's address. *Id.*

¶ 67    After the purchaser filed a petition for tax deed, certain objectors opposed it, arguing that Nikki was an interested party entitled to notice. *Id.* at 988. The trial court denied the objections. On appeal, this court reversed:

> "As petitioner's tax deed application noted, Sylvia's will was admitted to probate in 2000 and she devised the subject property in equal shares to her children, Nikki Henkin and Julian Muskat. Because Nikki had a right to redeem, and was vested with title to half of the subject property, she was one of the 'parties interested' in the property and she had a right to notice pursuant to section 22-10 of the Code." (Internal quotation marks omitted.) *Id.* at 991.

¶ 68    *Muskat* is factually distinct from the instant situation, because Charlene's will was not admitted to probate. Newline urges that, because the will was not admitted to probate, Henry was not an interested party entitled to notice. Newline points out that, without probate proceedings, an heir has no right to take title to the property. See *Krasauski v. Birbalas*, 46 Ill. App. 2d 226, 230 (1964) ("[I]t is the general rule that a will, until it has been duly admitted to probate *** is wholly ineffectual as an instrument or muniment, or as evidence, of title, or to pass title, or to confer rights ***." (Internal quotation marks omitted.)). Likewise, section 4-13 of the Probate Act of 1975 provides: "Every will when admitted to probate as provided by this Act is effective to transfer the real and personal estate of the testator bequeathed in that will." 755 ILCS 5/4-13 (West 2022). Newline also argues that Henry's status as successor executor does not make him an interested party, as "[a]dministrators of estates take no title or interest in the real estate of a decedent, except

naked power to sell it if the estate assets are insufficient to satisfy debts." *In re Estate of Stokes,* 225 Ill. App. 3d 834, 840 (1992) (citing *People v. Weinstein,* 105 Ill. App. 2d 1, 6 (1968)).

¶ 69    The question then becomes whether Henry was a party "interested" in the property by virtue of being named in the will, notwithstanding that he could not take title to the property if the will was not admitted to probate. The parties have not identified (and we have not seen) a decision squarely addressing whether an individual identified as a future heir to the subject property is "interested in the property" for purposes of section 22-10, where the will was not admitted to probate.

¶ 70    We recognize that the statutory language "must be given its plain and ordinary meaning." *Glohry,* 2011 IL App (1st) 101966, ¶ 21. Further, we will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent of the legislature. *Gaffney v. Board of Trustees of the Orland Fire Protection District,* 2012 IL 110012, ¶ 56.

¶ 71    Given the plain meaning of the term "interested", we believe that Henry was a person "interested in the property" for purposes of section 22-10 (35 ILCS 200/22-10 (West 2022)), since he was identified in Charlene's will as a party who could expect to inherit the subject property. We believe he had an "interest" in the property, regardless of whether the will was submitted to probate.

¶ 72    Section 22-10 requires notice to be sent to "owners, occupants, and parties interested in the property." *Id.* The legislature did not define the term "interested" or otherwise place limitations on that term. There is nothing in that statute to suggest it sought to limit the scope of "interested" persons to those that have a current right to own, occupy, or transfer the subject property. We will not read any such limitations into that term.

¶ 73        Further, the commonly understood meaning of "interested" supports a reading of section 22-10 that encompasses persons designated in a will to inherit the property. Merriam-Webster defines "interested" to mean (1) "having the attention engaged" or (2) "being affected or involved." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/interested (last visited Jan. 31, 2024) [https://perma.cc/3UAY-JHX6]. Certainly, one who is named in a will as a future heir of property has reason to have his or her attention directed to tax deed proceedings related to the property, as the proceedings may affect the future interest evidenced by the will. In other words, we cannot say that such a person lacks any interest in the property, even if the will has yet to be admitted to probate. That is, the "interest" in the property exists even if the individual cannot yet exercise a right to the property. Here, the children identified in Charlene's will (including Henry) were certainly "interested" in the property even if they could not immediately take title to it.[6]

¶ 74        Moreover, we note that applying a broader reading is consistent with the "primary purpose of the tax sales provisions of the Property Tax Code," which is "to coerce tax delinquent property owners to pay their taxes, not to assist tax petitioners in depriving the true owners of their property." (Internal quotation marks omitted.) *In re Application of the County Treasurer*, 347 Ill. App. 3d 769, 777 (2004). "The notice provisions assure that all persons with sufficient interest in the property receive appropriate notice of the tax deficiency, sale, and time for redemption." *Id.* This purpose is furthered by applying a broader definition of who qualifies as an "interested" party entitled to notice.

---

[6]The record indicates that, when Charlene died, some of her children were old enough to have children of their own. Yet, this record does not indicate whether there were any grandchildren of Charlene who might have also had an interest in the property. That is, there could have been grandchildren whose parents predeceased Charlene and thus stood to inherit a portion of her estate. Such grandchildren, if they existed, might also be considered interested in the property.

¶ 75          In sum, we reject Newline's suggestion that Henry was not an "interested" person entitled to notice, merely because the will was not submitted to probate. Although we recognize that Henry could not take title to the property absent probate proceedings, the legislature did not so limit the scope of "interested" parties entitled to notice. Rather, we think that Henry was an "interested" person by being designated as a future heir in the will.

¶ 76          2. The Finding that Newline Failed To Conduct A Diligent Inquiry Was Not Against the Manifest Weight of the Evidence

¶ 77          Separate from the issue of whether Henry was an interested party, Newline challenges the trial court's finding that it failed to conduct the requisite diligent inquiry to identify him. Newline urges that the finding was against the manifest weight of the evidence, claiming the trial court made "misstatements of fact" and "stated facts not in the record" in its ruling. According to Newline, the record shows that it diligently sought to identify interested parties, as it "searched probate records and found no record of a probate case or will for Charlene Bardwell, then conducted an Accurint search to identify her current address."[7] Newline states that it determined from the Accurint search that Charlene "may be deceased, so it named her both individually and as possibly deceased" and used results of the Accurint search "to name and serve the identified potential heirs."

¶ 78          Newline maintains it never had access to Charlene's will during the notice serving period, claiming (in a footnote) that a search of "both the probate and will divisions of the online records fails to yield result for Charlene Bardwell." Indeed, Newline states that it did not obtain a legible copy of the will until one was attached to Roy's reply brief in January 2022.

---

[7]Accurint is a LexisNexis service that is a "direct connection to public records to help verify identities, conduct investigations and detect fraud." LexisNexis Accurint, https://accurint.com (last visited Jan. 31, 2024) [https://perma.cc/M73E-KKRY].

¶ 79    Roy responds that Charlene's will was publicly available through Cook County records and could have been obtained either through in-person inspection or an online search. He points out that a search for Charlene Bardwell using the "Probate Will Search" tool on the website for the clerk of the circuit court of Cook County shows the will was filed under the docket number 1995W010665. As the will could have been discovered through this additional search, Roy maintains that the trial court's finding of insufficient diligence was not against the manifest weight of the evidence. For the following reasons, we agree with Roy on this point.

¶ 80    "The Code requires a tax purchaser to serve notice upon all individuals holding an interest in the property if their identities can be discovered through diligent inquiry." *Glohry*, 2011 IL App (1st) 101966, ¶ 44. A diligent inquiry is that "which a diligent person who is intent on discovering a fact would reasonably make." *Id.* It has also been described as an inquiry "as full as the circumstances of the situation will permit." (Internal quotation marks omitted.) *In re Application of the Douglas County Treasurer & ex officio County Collector*, 2014 IL App (4th) 130261, ¶ 34.

¶ 81    "Whether the purchaser's actions are sufficient to comprise due diligence in determining the identities of, and providing notice to, those who hold an interest in the property is a question of fact." (Internal quotation marks omitted.) *Gupta*, 2015 IL App (4th) 140810, ¶ 30. "The trial court's determination as to diligence 'will not be reversed on appeal unless it is against the manifest weight of the evidence.' " *Id.* (quoting *Gacki v. La Salle National Bank*, 282 Ill. App. 3d 961, 964 (1996)). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 82       The trial court's comments during its ruling reflect its belief that Newline's search for probate records (absent a broader public records search for Charlene's will) was insufficient to constitute a sufficiently diligent inquiry:

> "In the Court's view, Newline had a duty to look beyond its limited inquiry they conducted because they were put on notice of Charlene Bardwell's death ***.
>
> To look only whether a probate estate was open is only half of a diligent inquiry that would be required under the facts [and] under the circumstances of the case. Therefore, the Court finds that the petitioner *** did not conduct a diligent inquiry to determine the interested parties in the property."

¶ 83       We recognize Newline's claim that the trial court made misstatements of fact when it commented that "Newline argues that since no probate estate was ever open and because they could not find the will to be legible they conducted a diligent inquiry." In context, we think the court was merely summarizing Newline's position (reiterated in this appeal) that it conducted sufficient due diligence by searching probate records related to Charlene and that it had no further obligation to search other public records for her will. That is, the trial court apparently agreed with Roy that due diligence would have included a separate public records search for the will, apart from records of probate proceedings.

¶ 84       Notably, Newline does not dispute that it did not search any records of the circuit court of Cook County, apart from probate records. Its brief states (without any citation of the record) that

it "searched probate records and found no record of a probate case or will for Charlene Bardwell."[8] Newline effectively concedes that it did not attempt to look beyond records of cases filed in probate court to discover Charlene's will.

¶ 85    Newline now claims that an online search of public records "fails to yield results for Charlene Bardwell." This is incorrect. As discussed in Roy's brief, review of the "Online Case Search" page on the website for the clerk of the circuit court of Cook County indicates that the will was discoverable through that resource. Notably, that page contains a link to perform a "Probate Docket Search" for cases filed in probate court, in addition to a "Probate Will Search" link to "[s]earch records related to Wills filed with the County of Cook, Illinois." See Online Case Search, Clerk of the Cir. Ct. of Cook County, https://casesearch.cookcountyclerkofcourt.org (last visited Jan. 31, 2024) [https://perma.cc/FE4M-2Y4B].

¶ 86    The "Probate Will Search" link allows a search by case number or by name. See Probate Will Search, Clerk of the Cir. Ct. of Cook County, https://casesearch.cookcountyclerkofcourt.org/ProbateWillSearchAPI.aspx (last visited Jan. 31, 2024) [https://perma.cc/Q7BV-N9RD]. A search of Charlene Bardwell's name reveals that a will was filed for her estate on November 22, 1995, under case No. 1995W010665. Probate Will Search, Clerk of the Cir. Ct. of Cook County, https://casesearch.cookcountyclerkofcourt.org/ProbateWillSearchAPI.aspx (last visited Jan. 31, 2024) [https://perma.cc/6U3N-W5T6]. We may take judicial notice of the fact that this record of the will was publicly available. See *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37 (an appellate court may take judicial notice of readily verifiable facts if doing so will

---

[8] As Roy's brief points out, Newline did not explicitly represent to the trial court that it had, in fact, searched probate records or other court records in order to identify interested parties entitled to notice. Rather, at the January 2022 hearing regarding the objections, Newline's counsel stated that its "only indication" that Charlene was deceased "was our Accurint search on her." The record does not otherwise indicate the specific steps Newline took to identify interested parties.

aid in the efficient disposition of a case). "Information on websites and in public records are sufficiently reliable such that judicial notice may be taken. [Citations.]" *Leach v. Department of Employment Security*, 2020 IL App (1st) 190299, ¶ 44.

¶ 87    Had Newline conducted such a simple online search, it could have at least discovered the existence of the will. It could then have accessed the contents of the will, either by going to the circuit court or by viewing records online through the clerk of the circuit court of Cook County's "CCC Portal." See CCC Portal, Clerk of the Cir. Ct. of Cook County, https://cccportal.cookcountyclerkofcourt.org/CCCPortal (last visited Jan. 31, 2024) [https://perma.cc/C5TT-H8NB]. Thus, the contents of the will—including Henry's status as a designated legatee under the will—could have been discovered through public records.

¶ 88    The question becomes whether Newline was obligated to undertake such a search to be deemed to have conducted the requisite "diligent inquiry," that is, the "inquiry which a diligent person who is intent on discovering a fact would reasonably make." *Glohry*, 2011 IL App (1st) 101966, ¶ 44. Our case law indicates that due diligence includes search of public records to discover interested parties. See *Gupta*, 2015 IL App (4th) 140810, ¶ 33 ("[I]nterested parties *** whose names and addresses can readily be ascertained from public records have a constitutional right to notice of tax deed proceedings, and the failure of the tax sale purchaser to consult the public records to make this determination constitutes a lack of diligence." (Internal quotation marks omitted.)). This court has also held that "a petitioner must make a diligent inquiry and effort to notify parties whose interest may reasonably be *inferred* from the public record. [Citation.]" (Emphasis in original). *Glohry*, 2011 IL App (1st) 101966, ¶ 51. That is, "a tax purchaser has failed to act with minimal diligence if he has not made reasonable efforts to notify all persons whose interest may reasonably be inferred from the public records regarding the property's ownership."

*Id.* ¶ 44 (citing *County Treasurer*, 347 Ill. App. 3d at 777, 778, citing *Payne v. Williams*, 91 Ill. App. 3d 336, 341-42 (1980)).

¶ 89    Consistent with this precedent, we think that a diligent person intent on discovering interested parties would have undertaken a search of public records for Charlene's will, beyond merely searching for whether a probate case was opened. This is especially so, given the relative ease with which one can search whether a will was filed online through the clerk of the circuit court of Cook County's website. There is no dispute that Newline did not undertake such a search, which would have led to discovery of the will and identification of Henry as an interested party.

¶ 90    Accordingly, the trial court's conclusion that Newline failed to conduct requisite diligence is not against the manifest weight of the evidence. Thus, it properly upheld Roy's objection to the issuance of a tax deed, based on the failure to name and serve Henry as an interested party. Because this objection was meritorious, we affirm the denial of Newline's petition for a tax deed.

¶ 91    Before we conclude, we pause to express our serious concern that Newline's brief to this court contained at least one definite misrepresentation of fact and at least one other significant statement lacking any record support. Newline represented to this court (without citation) that "a search of the public records in both the probate and will divisions of the online records fails to yield results for Charlene Bardwell." As discussed, a simple online search would have quickly demonstrated that there was, in fact, a public record of the filing of Charlene's will in 1995. Furthermore, there is no record citation supporting Newline's claim that it "searched probate records and found no record of a probate case or will for Charlene Broadwell" before conducting an Accurint search. As Bardwell points out, in the trial court Newline did not claim that it had done such a search but represented to the court that an Accurint search was its "only indication" of Charlene's death. Indeed, there is nothing in the record indicating that Newline ever submitted

an affidavit or other evidence to show that it had searched probate or other court records to identify interested parties. We admonish Newline's counsel to be wary of making factual representations to the court without conducting a good-faith effort to ensure their veracity and that it must support factual assertions with supporting record citations or explain why none can be provided.

¶ 92                                                        CONCLUSION

¶ 93        In summary, the trial court properly upheld Roy's objection premised on Newline's failure to obtain leave of court for an extension of the redemption date pursuant to section 21-385. That failure alone warranted denial of the tax deed. We also find the trial court correctly upheld Roy's separate objection, premised on Newline's failure to identify, name, and serve Henry as a party interested in the property. We hold that Henry was an interested party entitled to notice and that the trial court did not err in finding that Newline failed to conduct the requisite diligent inquiry. For these independent reasons, we affirm the denial of Newline's petition and application for an order directing the issuance of a tax deed.

¶ 94        Affirmed.

*In re Application of the County Treasurer of Cook County*, **2024 IL App (1st) 220670**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-COTD-1211; the Hon. James Carroll, Judge, presiding. |
| **Attorneys for Appellant:** | Bryan D. Hughes, of Newline Financial, LLC, of Carol Stream, for appellant. |
| **Attorneys for Appellee:** | Mindy S. Salyer and Amanda L. Moressi, of Salyer Law Offices, LLC, of Chicago, for appellee. |